# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| STANLEY BOIM, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF DAVID BOIM, DECEASED, AND JOYCE BOIM, <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN MUSLIMS FOR PALESTINE; AMERICANS FOR JUSTICE IN PALESTINE EDUCATIONAL FOUNDATION; and RAFEEQ JABER <br><br> Defendants. | Civil No. 22-cv-06085 <br><br> Hon. Andrea R. Wood <br><br> Hon. Heather K. McShain |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO THE MOSQUE FOUNDATION'S OBJECTION TO MAGISTRATE JUDGE MCSHAIN'S REPORT AND RECOMMENDATION

The initial Motion (Dkt. 1) filed by the Mosque Foundation (the "Foundation") failed to set forth an adequate basis for quashing Stanley and Joyce Boim's (the "Boims") subpoena. For that reason, Magistrate Judge McShain issued a Report and Recommendation ("R&R") on September 25 (Dkts. 34 and 36-1[1]), recommending the Court deny the Foundation's Motion to Quash (the "Motion"). The Foundation now seeks *de novo* review of that R&R.

In presenting its Objection, the Foundation is limited to the arguments set forth in its Motion and reply in support thereof; it cannot rely on any arguments raised for the first time in its Objection. Magistrate Judge McShain addressed the arguments the Foundation presented in its Motion and subsequent reply in the R&R and correctly rejected all of them.

---

[1] Marked as Exhibit C and beginning on page 17 of the Foundation's combined exhibit filing.

Specifically, Magistrate Judge McShain found that the meeting minutes sought by the Boims are relevant and that the Foundation failed to substantiate its argument that producing the requested information would pose an undue burden. And with respect to the search terms the Boims asked the Foundation to run across sources of potentially responsive information, Magistrate Judge McShain again found that the search terms were "clearly relevant to establishing whether AMP is an alter ego of IAP." (Dkt. 36-1, Tr. p. 11:12-17) In addition, Magistrate Judge McShain noted that the Foundation "ma[de] no attempt to demonstrate how the [Boims'] request is unduly burdensome." (*Id.*, at Tr. p. 11:5-11) Finally, Magistrate Judge McShain noted the Foundation's unwillingness to meet and confer to potentially narrow the search terms. (*Id.*, Tr. p. 11:18-24)

Nothing in the Foundation's Objection merits altering Magistrate Judge McShain's R&R. It remains true that the Boims did not randomly target the Foundation: it is a key player in this case. (Dkt. 13, at p. 1) The Boims' Amended Complaint alleged in detail that the Foundation supported the Islamic Association for Palestine and the American Muslim Society's (together, "IAP") efforts to promote and fund Hamas prior to becoming defunct. And when those organizations reemerged as Defendants American Muslims for Palestine and Americans for Justice in Palestine (together, "AMP"), the Foundation fostered the transition and assisted in facilitating the disguised continuance of IAP as AMP. Accordingly, the information sought from the Foundation is relevant.

The Foundation's burden arguments remain unsubstantiated and thus insufficient as a basis to quash the Boims' subpoena. Nothing in the Objection or Mr. Jammal's declaration sets forth with any specificity the burden to the Foundation of producing its meeting minutes or running the Boims' search terms – *e.g.*, the expense or amount of time identifying and producing

the records or running the search terms would entail. Instead, the Foundation reverts to conclusory statements that running the searches or producing the records would be burdensome and would amount to a "fishing expedition" and "harass[ment.]" These arguments were insufficient when the Foundation made them initially and they are still insufficient today.

As such the Court should overrule the Foundation's Objection and adopt Magistrate Judge McShain's R&R in its entirety.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. THE FOUNDATION'S RELATIONSHIP TO THIS CASE.

Prior to the Boim Judgment, the Foundation worked closely with IAP, often with blurred boundaries between them. That close relationship has continued with IAP's alter ego AMP. (FAC, at ¶¶ 110-111)

Indeed, Defendant Rafeeq Jaber was formerly the Foundation's president and testified that his involvement with the Foundation ultimately led him to becoming the leader of IAP. *Boim v. Quranic Literacy Institute ("QLI")*, 340 F. Supp. 2d 885, 910 (N.D. Ill. 2004) ("Mr. Jaber testified that, in connection with his involvement with the Mosque Foundation he became known as the head of IAP's Chicago chapter in 1991."). The Foundation's long-time Imam, Sheikh Jamal Said was IAP's Imam, the organization's ultimate religious authority (Dkt. 179, at ¶ 112) Sheikh Jamal Said was a frequent speaker at IAP events and continued in that role with AMP, beginning at its very first national convention. (FAC, at ¶¶ 112-113)

Like IAP, the Foundation has a history of directing funds to designated terrorist organizations. It previously donated funds to the Holy Land Foundation ("HLF"), IAP's financial conduit to Hamas – as well its successor entity, KindHearts. (FAC, at ¶¶ 60 and 111) It also donated funds to Benevolence International Foundation and the Global Relief Foundation; the

United States Treasury designated both organizations as financiers of terrorist organizations. (*Id.*, at ¶ 111)

Former IAP and subsequent AMP leader Abdelbasset Hamayel also has a long connection to the Foundation. Prior to the Boim Judgment, Hamayel was the Director and Secretary General of IAP and was described by Jaber as "the employee that works for us, the executive director, the secretary. He is everything." (FAC, at ¶ 120) Once IAP became "defunct," Hamayel went to work at KindHearts, an organization that had its assets frozen because it was the "progeny" of the Holy Land Foundation and provided "support for terrorism behind the façade of charitable giving." (FAC, at ¶¶ 60, 121) After KindHearts funds were frozen by the Treasury and it agreed to go out of business, Hamayel went to work for the Foundation, where he was hired by former IAP and current AMP spiritual leader Sheikh Jamal Said. (*Id.*, at 121) Shortly thereafter, and while being paid by the Foundation, Hamayel became AMP's "voluntary" and "temporary" Executive Director in 2009 – a position he held for several years. (*Id.*) As recently as May of 2021, Hamayel, "on behalf of" AMP, was promoting AMP events hosted at the Mosque Foundation. (*See* Dkt. 21-1, message board post dated May 12, 2021).

**B. PROCEDURAL BACKGROUND.**

The Boims served the Foundation with a subpoena on September 23, 2022. On or about October 18, 2022, counsel for the Foundation reached out to counsel for the Boims and requested an extension for the Foundation's response, which the Boims agreed to. On October 20, 2022, the parties had their first meet and confer session. (*See* Dkt. 13-1) During this meet and confer, counsel for the Foundation reiterated his view that the Boims' requests were overly broad. Counsel for the Boims expressed a willingness to narrow certain requests but suggested that the

Foundation's counsel familiarize himself with the potential sources of discoverable information to enable the parties to have a constructive discussion to that end. The parties also agreed to another brief extension of the Foundation's deadline to respond to the Boims' subpoena. (Dkt. 13-2)

The following week, the Foundation sent objections and responses to the Boims' requests as well as the Foundation's document retention policy and sought an additional extension, which the Boims again agreed to. (Dkt. 1, at pp. 21-22; 24-27; Dkt. 13-3) On November 3, 2022 the Foundation filed its Motion to Quash. (Dkt. 1). When counsel for the Boims asked whether the Foundation's motion meant it was finished conferring regarding the scope of the subpoena, the Foundation's counsel responded that he filed the motion to avoid running afoul of the Foundation's deadline to respond. (*See* Dkt. 13-5). Subsequently, the parties conducted a long meet and confer and the Foundation produced a small number of documents responsive to the Boims' subpoena. (Dkt. 20, at p. 5).

On December 12, pursuant to the Court's order (Dkt. 14), the parties conferred via video conference to determine what issues, if any, remained outstanding between the parties. During that meet and confer session, the Foundation indicated its willingness to run search terms proposed by the Boims. At the conclusion of the session, it appeared the parties were only at an impasse over production of the Foundation's meeting minutes that reflected the identities of its directors and officers. (Dkt. 21-2, at 2-3). However, after the Boims subsequently sent the Foundation a list of 48 search terms (*Id.*, at 5), the Foundation reversed course, claiming to have already run "the previously requested terms" and refusing "to run any more searched." (*Id.*, at 1-2). Because the Boims had not previously provided the Foundation with a list of search terms to run, Counsel for the Boims requested a list of the terms that the Foundation had run. (*Id.*, at 1).

The Foundation responded with a list of eleven terms—six of which were included on the Boims' list of search terms; two of which were *similar* to terms on the Boims' proposed list—and stated that it objected to every search term on the Boims' proposed list that was "not listed in [the Boims'] subpoena." (*Id.*, at 1).

On December 28, 2022, with the parties at a confirmed impasse over whether the Foundation should have to 1) produce the responsive meeting minutes and 2) run the 48 search terms proposed by the Boims against the Foundation's potential sources of responsive information, the Boims filed a Response focusing upon those two impasses. (Dkt. 20).

On September 22, 2023, Magistrate Judge McShain held a telephonic motion hearing at which she read her ruling into the record (Dkt. 36-1), followed by a written R&R on September 25, 2023, recommending that the Court deny the Foundation's Motion, "[f]or the reasons stated on the record." (Dkt. 34). The Foundation filed its objection to Magistrate Judge McShain's R&R on October 6, 2023. (Dkt. 36).

## II. STANDARDS OF REVIEW

Per Federal Rule of Civil Procedure 72(b)(3), when reviewing an objection to a report and recommendation issued under Rule 72(b)(1), "[t]he district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." After conducting its *de novo* review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." FED. R. CIV. P. 72(b)(3). "Being persuaded by the magistrate judge's reasoning, even after reviewing the case independently, is perfectly consistent with *de novo* review." *Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013).

6

An objection to a report and recommendation can only raise arguments previously submitted to the magistrate judge. *Artuk, Inc. v. AKT Corp.*, No. 13 C 3811, 2014 U.S. Dist. LEXIS 108793, at *15 (N.D. Ill. Aug. 7, 2014) ("[t]he law is clear that arguments not made before the magistrate judge are generally waived.") (citing to *United States v. Melgar,* 227 F.3d 1038, 1040 (7th Cir. 2000)).

### III.    LEGAL DISCUSSION

**A. THE INFORMATION SOUGHT FROM THE FOUNDATION'S MEETING MINUTES IS RELEVANT AND THE FOUNDATION HAS NOT ARTICULATED AN UNDUE BURDEN IN PRODUCING THAT INFORMATION.**

The Boims requested information reflecting the directors and officers of the Foundation as well as their specific titles and job responsibilities. This information is relevant to the Boims' case as it may further evidence the significant influence the Foundation had on IAP and its alter ego AMP as a source of competent personnel committed to the mission as well as ideological inspiration, direction, and consistency. (FAC ¶¶ 110-113)

In the R&R, Magistrate Judge McShain agreed as to the relevance of this information to the Boims' case, noting the Boims' allegations that: 1) the Foundation previously funded IAP and KindHearts and now funds AMP; 2) the Foundation's Sheikh Jamal Said was IAP's religious leader, regularly spoke at its functions, and now does so at AMP functions; 3) Defendant Rafeeq Jaber, who became involved in IAP through the Foundation, has "suggested that Zionist forces will work against AMP in the same way they did against IAP, which implies an equivalence between the organizations;" and 4) Abdelbasset Hamayel, who is a Foundation employee, served as temporary Executive Director of AMP for several years, had his salary for that position paid by the Foundation, and helped AMP begin fundraising. (Dkt. 36-1, at Tr. pp. 8:11-9:06).

The Foundation's Objection appears to argue that the identity of its directors and officers listed in the meeting minutes is not relevant because some of the individuals who served on the

7

Foundation's board were only volunteers. As an initial matter, the Foundation did not raise this argument before Magistrate Judge McShain and, therefore, the Court should not consider it when addressing the Foundation's Objection. But setting that aside, the Foundation fails to explain why the identity of a board member serving as a volunteer is less relevant than an individual serving as a board member in some other capacity.

Further, the Foundation's contention that it should not have to produce the meeting minutes because they may contain irrelevant information is unavailing. As Magistrate Judge McShain noted in the R&R, to the extent the meeting minutes contain irrelevant information, the proper procedure would be for the Foundation to either use an agreed Protective Order to limit disclosure of irrelevant or otherwise confidential information or redact the information. (*E.g*, Dkt. 36-1, at Tr. pp. 15:19-16:17) In discovery, parties and non-parties alike are routinely required to produce documents that arguably contain a mixture of responsive and non-responsive information. In such instances, the potential inclusion of non-responsive information in a document does not relieve the producing party of its obligation to produce it.

Regarding the Foundation's undue burden argument, as Magistrate Judge McShain notes, such a burden must be shown, not merely stated, and the Foundation has failed to make such a showing. (Dkt. 36-1, Tr. p. at 9:14-17 ("Turning to the burden, the Foundation has not demonstrated that complying with the subpoena would impose an undue burden on it, even recognizing, as the Court does, that it is a nonparty to this suit.")) While the Foundation references a declaration from Mr. Jammal, that declaration is "purely conclusory." (Dkt. 36-1, at Tr. p. 9:18-22) For example, Mr. Jammal references the "tremendous burden" of retrieving ten years of meeting minutes, but provides no information specifying or even estimating the volume of meeting minutes, the difficulty of locating them, or the number of hours it would take to

prepare them for discovery. (Dkt. 36-1 at ECF p. 35) Therefore, the Foundation's burden-based objection should be overruled because it does not demonstrate the nature and extent of the burden. *See Belcastro v. United Airlines, Inc.*, No. 17 C 1682, 2019 U.S. Dist. LEXIS 65847, at *10 (N.D. Ill. Apr. 17, 2019) (finding that a burden objection "must adequately demonstrate the nature and extent of the claimed burden by making a specific showing as to how disclosure of the requested documents and information would be particularly burdensome.").

Moreover, the Foundation's proposed alternative, requiring the Boims to provide a list of names that the Foundation will then run against the meeting minutes, should also be rejected because it is neither less burdensome nor appropriate. The alternative is not less burdensome because it would require the Foundation to locate and gather all the meeting minutes, convert them into a text searchable format, and then run numerous searches to identify the names of individuals provided by the Boims. By contrast, to comply with Magistrate Judge McShain's R&R, the Foundation will only need to gather the records, designate them pursuant to a Protective Order, and then produce them to the Boims.

The alternative is also not appropriate because it assumes the Boims are aware of every individual with significant involvement in IAP, AMP, and the Foundation. They are not. As alleged in the Amended Complaint, the entities at issue, IAP and AMP, operated without regard for corporate formality and therefore generally had poor record keeping habits. (Dkt. 179, at ¶¶ 152-155) That is one of the reasons the Boims are seeking this information in discovery from a third party. Preconditioning the Boims' access to this information on their current knowledge of each Foundation director or officer's involvement with AMP and IAP effectively raises the discovery standard for the Boims without any reason for doing so. Indeed, the Foundation has

9

not identified any specific basis for protecting the meeting minutes from disclosure.[2] Finally, even if the meeting minutes did include information that warranted protection from disclosure, a more appropriate measure that would not infringe on the Boims' right to obtain responsive and relevant information in discovery would be to enter an agreed Protective Order and designate the information confidential. The Boims are, and have been, willing to enter such an order.

Accordingly, the Foundation's objections to the R&R with respect to production of its meeting minutes should be overruled.

**B. THE FOUNDATION SHOULD RUN THE BOIMS' PROPOSED SEARCH TERMS.**

After several meet and confers regarding the subpoena at issue, the Boims asked the Foundation to run 48 search terms across its thirteen employees' accounts and other potential sources of responsive information. While this request was not initially a point of contention, the Foundation reneged on its commitment to run the search terms and refused to consider running a narrowed list of terms. (Dkt. 21-2)

Magistrate Judge McShain's R&R found that the search terms were "clearly relevant" to establishing the Boims' alter ego claim. (Dkt. 36-1, at Tr. p. 11:12-18) In addition, it concluded that the Foundation again failed to articulate any particular burden in conducting searches using the Boims' terms. (*Id.*, at Tr. p. 11:05-11) Finally, she noted the Foundation's unwillingness to meet and confer to discuss narrowed search terms. (*Id.*, at Tr. p. 11:18-24)

Most of the Foundation's objections on this point are thinly veiled attempts to address inadequacies in its initial filings and introduce new arguments it failed to raise. As discussed *supra*, a party cannot use an objection to a report and recommendation to address inadequacies in its initial filings or to raise new arguments. *Artuk, Inc.*, 2014 U.S. Dist. LEXIS 108793, at *15 (".

---

[2] For example, the current membership of the Foundation's board of directors is currently listed publicly on its website. https://mosquefoundation.org/board-of-directors/ (last visited December 27, 2022).

10

. . [t]he law is clear that arguments not made before the magistrate judge are generally waived.") (citing to *Melgar,* 227 F.3d at 1040).

One such example is the Foundation's assertion that Magistrate Judge McShain "improperly overlooked the argument of the [Foundation] that the forty-eight search terms are not included in the Plaintiffs' subpoena and therefore the Respondent should not be ordered to run a search for said terms." (Dkt. 36, at 6) Magistrate Judge McShain *could not* have overlooked such an argument, because no such argument was presented in the Foundation's prior briefs. While the Foundation briefly noted that "[m]ost of" the terms "are not relevant and not requested in the Plaintiffs' subpoena," it did not present an argument about the legal significance of the search terms not being included in the subpoena. (Dkt. 26, at 5). Instead, the Foundation objected to the terms on the conclusory grounds that they were not "relevant to [the] case and intended to harass" the Foundation. (*Id.*). The Court should, accordingly, overrule this objection.

Furthermore, even if it did not waive that argument, the Foundation has presented no legal authority to support its newfound "main argument" that the search terms not being attached to the subpoena is relevant to the Court's analysis. (Dkt. 36, at p. 9) The lack of supporting precedent is not surprising. The use of search terms to identify responsive electronically stored information ("ESI") from various databases is a routine practice in complex litigation. *See, e.g.*, *Ronin Capital, LLC v. Mayorga*, No. 16 CV 6909, 2016 U.S. Dist. LEXIS 176739, at *15 (N.D. Ill. Dec. 26, 2016) (ordering the parties to meet and confer to determine the appropriate search terms.); *Jones v. Nat'l Council of YMCA*, 09 C 6437, 2011 U.S. Dist. LEXIS 123008 (N.D. Ill. October 21, 2011) (ordering production of documents collected pursuant to use of disputed search terms). Indeed, when the Boims initially asked if the Foundation would be willing to run a list of search terms, the Foundation had no objection to doing so.

11

It is, additionally, relevant to note that the eleven search terms the Foundation purports to have voluntarily run were not proposed by the Boims. (*See* Dkt. 36, at 6 (stating the Foundation ran the search "at the request of Plaintiffs"). The Foundation unilaterally decided upon eleven terms to search for and it was only after the Boims' counsel requested the list of terms that the Boims were made aware of the terms the Foundation decided to run. (*See* Dkt. 21-2 at p. 1 (Boim's counsel asks counsel "[c]an you send me a list of the terms that you did run?")).

As the Boims explained in their Response (Dkt. 20), the Foundation's position that the eleven search terms it ran are sufficient is untenable because the terms are facially underinclusive. For example, the list includes only abbreviations for organizations such as AMP and IAP, meaning any reference to those organizations' full names (*i.e.*, American Muslims for Palestine and the Islamic Association for Palestine) would not be captured in the Foundation's search. Completely excluded from the list of terms the Foundation used are key AMP and IAP leaders and surrogates such as Hatem Bazian, Kifa Mustapha, and Abdelbasset Hamayel. (Dkt. 179, ¶¶ 120-122; 129-131; 138-140). Many of the Boims' requests in the subpoena are aimed at uncovering information showing overlap and collaboration between the Foundation, IAP, and AMP. Accordingly, to be considered sufficient, any list of search terms would reasonably have to include references to the leaders and surrogates of those organizations.

Moreover, the Boims' contentions concerning the insufficiency of the Foundation's search and resulting need for it to run the 48 search terms is not speculative. To date, the Foundation has only produced payroll records of two employees and two pages of donor records; it has not produced any records reflecting events involving the Foundation and AMP or IAP, maintaining that the organizations have not partnered for any joint events. This is contradicted by

12

publicly available information showing that the Foundation has hosted AMP events at least twice since 2020. (Dkt. 21-1)

The Foundation's remaining arguments against running specific search terms are not properly before the Court because the Foundation did not raise them in its Motion or reply. The Foundation admits as much in its Objection. (Dkt. 36, at p. 7).[3] Further, in every instance, the arguments are conclusory and fail to substantiate the Foundation's contentions that the terms are irrelevant or meant to harass the Foundation. Ultimately, as Magistrate Judge McShain noted, the Foundation had an opportunity to raise its issues with the search terms via the meet and confer to discuss narrowed terms that the Boims offered or in its reply in support of its Motion. (Dkt. 36-1, at Tr. p. 17:6-13) The Foundation opted not to. It may now regret that decision, but its arguments are waived all the same.

## IV.   CONCLUSION

For the foregoing reasons, the Boims request that the Court overrule the Mosque Foundation's Objections and adopt Magistrate Judge McShain's Report and Recommendation in its entirety.

---

[3] The Foundation argues that this omission is excusable because it did not receive the search terms until after it filed its Motion to Quash. This argument lacks merit as the Foundation received the search terms almost one month before it filed its reply brief.

13

Date: October 20, 2023

Respectfully submitted,

*s/ Seth H. Corthell*
Daniel I. Schlessinger
Seth H. Corthell
Jaszczuk P.C.
30 South Wacker Dr., Suite 2200
Chicago, IL 60606
(312) 442-0401
dschlessinger@jaszczuk.com
scorthell@jaszczuk.com

*Attorneys for Stanley Boim, Individually and as the Administrator of the Estate of David Boim, Deceased, and Joyce Boim*

<u>Of Counsel</u>
Nathan Lewin (*pro hac vice*)
Alyza D. Lewin (*pro hac vice*)
LEWIN & LEWIN LLP
888 17th Street NW, 4th Floor
Washington, D.C. 20006
(202 828-1000

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been filed electronically using the Court's CM/ECF system and has been served to all parties via email through CM/ECF on this 20th day of October 2023.

<em>/s/ Seth H. Corthell</em>